Oral argument not to exceed 15 minutes, preside, Sean Patrick Donovan for the Apollo. Good morning, Your Honors. Thank you. May it please the Court, Sean Donovan, I do represent the appellant Donna Keller, and if I could, I would like to reserve five minutes for some Our view of this matter is, while the legal situation in and of itself is not terribly complex, I am going to get into the standards. But it's not the most complex legal case we've ever heard. I think factually, there's a lot of context here that makes this an important situation, and certainly for the appellant, it's very important to her. What we're seeking here today, Your Honors, is a reversal of the district court's denial of the motion to vacate a default judgment. This is in a civil collection action for an alleged transaction involving Ms. Keller's ex-husband. At the time they were married, at the time of the original transactions in this case, which, according to the complaint, was the purchase of an airplane and the financing of the purchase by the Appellee PNC Equipment Services. And we're asking for that reversal on a couple of different grounds. First of all, we're asking that the Court find that there was no service of Ms. Keller in this case, which we believe under 60B-4 would be a de novo analysis of the fact that Ms. Keller was not served. Is your sole evidence with regard to that, her statement, albeit under oath, that she doesn't recall being served? Yeah, the sole evidence on the record in this particular case is the affidavit, that's right. No, the sole evidence that she wasn't served is the affidavit, but there's clear evidence in the record that she was served. Well, and I'm going to address that. I think, I would not characterize it as clear, Your Honor, and I'm going to address why I think that in a moment, but that's the evidence. I'd like to hear that. The affidavits of the process server and then her evidence in the form of that affidavit. But beyond that, the second reason would be even if the Court were to uphold the finding that she was actually served, was there excusable neglect here? Was there some reason why she did not appreciate what she had been served with if she was in fact served? And there's a lot of evidence on that particular point in the affidavit. And with respect to the legal standard, which we find in the Burrell case, I think the Burrell case makes it clear that context in which this service happens and whether the defendant appreciates that or not is very important. In the context, there's a lot of evidence on the context here, which I'm going to summarize. But the second basis would be we'd ask the Court to find that an abuse of discretion occurred under 60 v. 1 and ultimately also in 60 v. 6. Because what the Burrell case tells us with respect to this situation is a clear example of an abuse of discretion occurs if the Court fails to consider all the relevant facts. And those relevant facts are supposed to be construed in the light most favorable to the movement. What is the most relevant fact that she has excusable neglect? I'm sorry, I couldn't hear the question. What is the most relevant fact? Well, sure, I'd like to go through that. So I think there's a number of them. In terms of the most relevant fact, perhaps I would characterize the most relevant fact as the fact that this was not the only debt of her ex-husbands that she was served with. And as she outlined in her affidavit, the relevance here is that every single time that she's been caught up in her ex-husband's debts, she has dealt with it legally. She's engaged in an attorney. She had somebody engaged to defend the action. Where is her excusable neglect in this? The fact that she did a good job in the past doesn't mean she did a good job. Yeah, I think, and I'm actually looking right here at her affidavit. What she indicates was that she did not know that she was served with a complaint, even if she was. And I understand her affidavit indicates, I have no recollection of this whatsoever. She says, I know I was in a different location on that day. Ten miles away. That's relevant. But it is relevant, Your Honor. She was at a different location. She doesn't say from dawn till dusk. She doesn't say anything except, I don't remember. Right. And I was somewhere else. Right. But then I think, and she continues on. And I understand that. And the other context there is the process server wasn't necessarily conclusive in and of itself. The process server indicates that the complaint was delivered. But then there's this reference to, well, there was a car in the parking lot that we may believe is affiliated with Ms. Keller. And I think the implication there is that even the process server wasn't entirely sure who was served on that particular day. Well, you described to your client, and he gives her a license plate number and all that. I guess the question is, do you dispute the truth of the process server's affidavit? Well, I don't think that's at issue. No, we're not disputing. Yes, it is. If you're denying service, do you dispute the truth of the process server's affidavit? I think we dispute whether the right person was who was actually served on that day. It was a business location. So you would say that your client doesn't match the description of the person the process server said he served? I think it's at least in question, Your Honor. I understand, and the judge clearly said, look, the process server indicates that this person was served. We understand that that's what the judge's decision was. It's in question, and the district judge found that she was served. What are we doing? What we're also looking at is really the second and third parts of the analysis, Your Honor. Part two is, was she really appreciative of what happened to her in this instance, and was there excusable neglect? Okay, so we get over the service. Now we're in excusable neglect. Sure. And I ask you what your strongest point was, and you said, well, she did a good job another time she was sued, and that's excusable neglect? I think it's excusable for a number of reasons, one of which she's indicated a number of times that any time this has happened to her, she's dealt with it. And her intent would clearly have been to deal with it in this case. That's clear from the affidavit, and she even indicates in paragraph 13 of the affidavit she did not know that the complaint was filed against her. At a minimum, she did not appreciate what was going on. And when we look at the legal standard, the legal standard says when we're evaluating a default judgment situation, one, under the Jinx case there is a more lenient standard for excusable neglect found in default cases for the exact reason that there's a presumption and there's a requirement to, if possible, decide cases on their merits. But the standard says, was there a contempt of the judicial process? Was there a culpability on the part of the defendant? And here, I think the evidence to me is very clear that there was no culpability on her part. Or at worst, there was an honest misunderstanding of what was going on. And I think even that is sort of a stretch based on the affidavits. Even if she was served, it's fairly obvious. And under the Burrell case, we're supposed to read the affidavits in the light most favorable to the defendant. It's clear from the affidavit that Ms. Keller did not truly appreciate the nature of what was happening in this particular case. And I think, Your Honor, I think the fact that she has done so in other cases is relevant to that consideration because she knows how to do it. And that's what that establishes. Doesn't it just cut against what you just said? If she knows how to do it, why didn't she do it in this case? Well, I guess our argument would be she would have if she understood. And I understand it's two sides of the same coin. But you just said she understood it with other cases. My question is, why didn't she understand it in this case? I think it's either because she didn't actually receive the copy of the complaint or she didn't get it. She also consented to service by mail, and she was also served by mail. I don't know that the mailing issue was part of the court's finding on the service. I could go back and look, Your Honor. My understanding was the court relied on the process over it. In any event, our argument on that would be you have to read these affidavits in the light most favorable to the defendant. And in this particular case, I think it's fairly clear that the district court did not do that. The district court really discounted that entirely and indicated that there's really no way anything that she had to say was relevant. But quite frankly, the fact that she knew what to do in other cases we find is a relevant factor that leads towards a finding of excusable neglect in this case. Because if she really had received a copy of that complaint, she would have done something about it. And that's what I think the affidavit would indicate. The other factors that are necessary here is two, whether the defendant has a meritorious defense, and three, whether the plaintiff will be prejudiced. I think I'll try to address, I know I'm low on time, I'll try to address quickly that the judge, that the plaintiff will certainly not be prejudiced in this particular case. The case is about a piece of commercial collateral that's already been repossessed and sold. There's no possible prejudice here. In terms of the second prong is whether the defendant has a meritorious defense. Her affidavit likewise indicates several factors as to why the actual judgment itself, or at least the amount of the judgment, was incorrect. And she clearly had meritorious defenses as a guarantor as to notice. She didn't receive notice of the disposition of the collateral. That's actually evidence from the documents in the complaint themselves and took no part in the collateral being sold and was not made aware of that. All those factors should have been considered, in our opinion, in the judge's analysis. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Blake Finney, and I represent PNC Equipment Finance, LLC. We stand here today and respectfully request that the Court affirm the District Court's decision denying Ms. Keller's motion to vacate the judgment against her on the basis that the District Court did not abuse its discretion in so doing. Ms. Keller below had the burden of demonstrating that she was entitled to relief under Rule 60B by clearing convincing evidence, and the Court determined that she had not done so. The standard for review for this Court under Rules 60B-1 and 6 is an abuse of discretion standard, and in particular for Rule 60B-6, this Court has stated in the Hennessey-Bagley case that the District Court's discretion is especially broad. There is some discrepancy among the Sixth Circuit case law as to what standard of review is required for Rule 60B-4. However, the only issues here to be determined are factual, whether Ms. Keller was served or not. And in those instances, the District Court's factual determinations are reviewed for clear error. This Court has said in the Airline Professionals Association v. ABX Air case, the District Court is given wide discretion in making factual determinations related to jurisdiction. And all of the relief sought by Ms. Keller under 60B is circumscribed by the policy in favor of the finality of judgments. I think this Court has already addressed in responding to Ms. Keller's argument that the District Court did make a factual determination that Ms. Keller was served. PNC respectfully states that that was not a clear error by the District Court. The Court actually did determine that Ms. Keller was served in two separate ways, once by mail pursuant to the agreement and her guarantee that PNC could do so, and second, by a personal process server. As you've noted, this process server explained that he personally served Ms. Keller, noted her physical description, and noted that her car was present in the parking lot at the time of service. Ms. Keller, in seeking to vacate the default judgment against her, submitted an affidavit. And what's telling is what this affidavit does not do. She does not deny being served. She does not deny being present at the time of her service. She does not deny the physical description given by the process server, and does not deny the fact that her car was in the parking lot at time of service. Thus, the Court's factual finding that Ms. Keller was served cannot be clear error because the Court relied upon the sworn under penalty of perjury return of service submitted by the process server. Ms. Keller also moved for relief under Rule 60B1, claiming that her failure to respond to the complaint was the result of excusable neglect. However, the District Court found that she failed to meet her burden of providing any facts to demonstrate excusable neglect, much less the clear and convincing evidence she was required to set forth. The only real statement in Keller's affidavit regarding why she did not respond to the complaint is that she doesn't remember being served. Unlike the Burrell v. Henderson case cited by Ms. Keller, in that instance, the defendant had attempted to answer the complaint by sending numerous letters to the District Court clerk, but those were never filed because they weren't official filings. There, there was an effort made and explained by the defendant of why the complaint had not been answered properly. Here, there is literally no evidence explaining why Ms. Keller has not answered the complaint. In terms of her prior track record, also, it's really, the District Court did consider that and said it just simply did not matter in this case because she had not explained why that track record would apply to this case. There's no explanation of what happened after Ms. Keller was served. This is a situation where she explained, I received the documents, I set them on my desk, subsequently, my office moved. Something like that, where she could explain a reason why she did not respond. That might be enough of an answer, enough of evidence to support an excusable neglect finding. However, here, her affidavit presents nothing. She had an opportunity to supplement her affidavit in her reply before the District Court and did not do so. The record simply lacks any evidence to demonstrate excusable neglect. She's also sought relief under Rule 60b-6. However, this is limited to extraordinary circumstances and there's really nothing extraordinary about this case other than the fact that a guarantor was served with a complaint and failed to respond. This case has, this court, in previous rulings, such as the Spartan Engineered Products case, has held that a default judgment in excess of a million dollars was not extraordinary when a defendant denied being served and, nonetheless, there was evidence that he had been served. In that instance, just like this one, the defendant was also mailed a copy of the motion for default judgment and failed to respond. Keller has never rebutted the fact that she was served with a copy of PNC's default briefing. To Keller's argument regarding her purported meritorious defenses, the case law is very clear in the Sixth Circuit under the Tri-Corner Investment case, the Wafer Song Limited case, and the Money for Lawsuits case, citing PNC's brief that when a district court determines that there is no excusable neglect, then there is no need to review the other united coin factors, and it was certainly not of use of discretion for the district court not to do so here after having first determined that there was no evidence of excusable neglect. Ms. Keller has also asked that this court find that it was an abuse of discretion for the district court not to hold an evidentiary hearing. However, Ms. Keller admits in her briefing that there is no requirement that the district court hold an evidentiary hearing, and that really begs the question of how it could have been an abuse of discretion for the court not to do so. This court, in the Veslejaj v. Peterson case, noted that a district court can rely on a sworn declaration to provide evidentiary basis for a party's damages, and that's just what was done in this case. PNC submitted an affidavit from one of its employees setting forth the current debts owed by Ms. Keller of the principal and interest amounts owing. Finally, Keller raises an argument for the first time before this court regarding her allegation that the PNC's damages are inconsistent with the complaint. However, as an initial matter, she never raised this before the district court, and thus we feel that this argument has been waived, as the district court is the finder of fact. This is the case under the Ladderman Incorporated v. Manufacturer of Distributive Services and the U.S. v. One Men's Rolex Pearl Watch cases. Regardless, though, the damages PNC is seeking in this case are consistent with the complaint. In paragraph 16 of the complaint, PNC noted that the aircraft underlying the transaction was sold for $700,000, but PNC only received approximately $433,000 and applied that amount to the current loan balance at the time. That is exactly what's shown in PNC's affidavit, as the loan amount has been reduced by that much. Just to respond to a few arguments made by Ms. Keller's counsel previously, whether they are now contesting whether the process server's affidavit is accurate, we believe that argument was never made before the district court and would be waived, and that's just not an argument before this court. If there are no further questions from the court, PNC would just rest on its briefs. There are not. Thank you, counsel. Thank you, Your Honors. Counsel, I'm perplexed a little bit. What is your meritorious defense? Suppose we said, okay, service is improper now. They serve you again. What would be your defense? The defenses largely relate, Your Honor, to the enforcement of the guarantee itself under Ohio law, and we outlined a lot of this in the briefing in the trial court level. She was entitled to notice. Well, assuming they gave her notice, and if we sent it back and they gave her notice, what's your defense? Well, the defense is that she didn't get notice with respect to the disposition. That's not a defense. That may be a process for her failure to raise a defense. I'm sorry. I was talking about notice of disposition of the collateral. That's what I thought you were getting at. All right. Suppose she got notice. What would you say then? Well, she has rights at that point. She has rights to redeem the collateral. She has rights to make money to redeem the collateral. Well, I don't know. There's no record on that, Your Honor. We didn't get to that. Wouldn't that go to the excusable neglect? Well, I think the excusable neglect. The mere fact that she has some statutory rights, perhaps, may or may not be relevant, depending on the factors. Well, our reading of the Burrell decision would be that that's relevant. And the courts under that case and under the UnitedCoin. Okay. You've answered my question. Okay. And that's what they're charged of doing is equity and liberally deciding was substantial justice done here. And while I do recognize what counsel indicated, that there is a policy in favor of finality of judgments, the Burrell case indicates that that policy is balanced by the competing policy of cases having been heard on their merits, which this one was not. And we do think that there was excusable neglect based on the factors in this particular case. Her affidavit states what her argument is, which is that I don't know that I ever appreciated receiving this particular complaint. If I had received this complaint, I surely would have done something about it because I've had to face this situation in other cases before. And she can only be as honest and straightforward as she was. And I think what we have here is, at worst, an honest mistake on her part. And so when we see that that's an honest mistake, we feel that that satisfies the excusable, the first prong of the excusable neglect factors, which allows us to say, yes, is there a meritorious defense? Yes, there are meritorious defenses in this case. She was not afforded notice of the disposition of the collateral. The plaintiff's own documents indicate that they tried to get her notice of the disposition. They actually sent it to her and asked for her signature. There's no signature on the notice form. Well, that's an indication that they didn't obtain the notice that was required. She's entitled to commercially reasonable procedures being followed. She has a right to redeem. There's other defenses which are not waivable under Ohio law, as was all set forth in the brief. And then getting back to the standards of deciding these default motions on themselves, in considering these motions for judgment by default, the court is to equity and liberally construe the facts in a light most favorable to the defendant to do substantial justice. Our argument is really what the trial court did was focus solely on the issue of whether or not she was actually served versus whether or not she appreciated being served and did she have contempt for the legal process in not responding. And quite frankly, even if the trial court found that she was served, we think the record's void of any suggestion whatsoever that she was ignoring this with any sort of contempt for the judicial process or not responding to the complaint for some other reason other than just an honest misunderstanding. And I think under those circumstances, what the trial court was charged with doing is construing that in her favor. And as far as the evidentiary hearing goes, the evidentiary hearing is there to resolve ambiguities and to decide questions such as this. And if there was any question whatsoever under the Burrell decision, the trial court is charged with resolving ambiguities in a light most favorable to the defendant. And the trial court did not do that in this case, and that's why we think there was a reversible error. We also feel that she's not culpable in what took place here. As I indicated before, basically what we're looking at is an honest mistake, a lack of appreciation for what had actually happened. And once she found out, she promptly filed a motion to set aside the default judgment. But at that point in time, there's nothing in the record that indicates any sort of contempt or ignorance of the judicial process. So, Your Honors, we appreciate your time, and we're asking that the trial court's decision be reversed. Thank you. Thank you, counsel. The case will be submitted.